UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

MEJEL JEFFREYS, on behalf of herself and all others similarly situated,

Plaintiff,

v.

HEALTH CARE FACILITY MANAGEMENT, LLC d/b/a COMMUNICARE FAMILY OF COMPANIES, *et al.*

Defendants.

CASE NO. 5:22-cv-371

JUDGE SARA LIOI

**JOINT MOTION FOR APPROVAL OF SETTLEMENT**

## I. Introduction

Representative Plaintiff Mejel Jeffreys, on behalf of herself and the current Opt-In Plaintiffs (collectively "Plaintiffs") and Defendants Health Care Facility Management, LLC d/b/a CommuniCare Family of Companies and OHNH Emp, LLC (collectively referred to as "Defendant"), collectively ("the Parties") respectfully move this Honorable Court to approve the proposed Settlement reached by the Parties and memorialized in the Joint Stipulation of Settlement and Release ("Settlement" or "Agreement") attached as Exhibit 1.

The proposed settlement will resolve bona fide disputes involving overtime compensation claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, as well as corresponding state wage-and-hour statutes. Plaintiff asserted that Defendant violated the FLSA by failing to pay its hourly, non-exempt employees, including Plaintiff, for all hours worked, including overtime compensation at the rate of one and one-half times their regular rates of pay for the hours they worked over 40 each workweek. Specifically, Plaintiff alleged that Defendant

violated the FLSA by failing to pay her and similarly-situated employees for time spent working while clocked out for a meal period. Defendant denies these claims.

If approved by the Court, the Settlement will provide for the issuance of Individual Payments within 45 days after the Court approves it.

The Parties respectfully submit that the proposed Settlement is fair and reasonable and satisfies the criteria for approval under § 216(b) of the FLSA. The Settlement was achieved during arms-length negotiations among the Parties, conducted by experienced counsel, and was reached during mediation with Magistrate Judge Amanda M. Knapp on September 24, 2024.

The settlement documents submitted for approval or entry by the Court consist of the following:

Exhibit 1: Joint Stipulation of Settlement and Release, and Appendix 1 thereto

Exhibit 2: Individual Settlement Agreement and Release

Exhibit 3: Declaration of Alanna Klein Fischer

Exhibit 4: Order of Dismissal and Approving Settlement

The following sections explain the nature of the Action, the negotiations, the Settlement's principal terms, and the propriety of approving the Settlement and its proposed distributions of settlement proceeds.

## II. Factual and Procedural Background

### A. The Action

On March 7, 2022, Representative Plaintiff Mejel Jeffreys filed this Action. (Doc. No. 1.)

On May 27, 2022, Plaintiff filed an Amended Complaint alleging that Defendant failed to pay Plaintiff and other similarly situated employees overtime compensation at the rate of one and one-half times their regular rate of pay for the hours they worked over 40 each workweek in

violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. (Doc. No. 15.) Specifically, Plaintiff alleged that Defendant violated the FLSA by failing to pay her and similarly-situated employees for time spent working while clocked out for a meal period.

On August 8, 2022, Defendant answered Plaintiff's Amended Complaint denying liability and disputing the damages asserted by Plaintiff. (Doc. No.19.)

On October 12, 2022, the parties filed a Joint Proposed Stipulation to Class Certification and Notice, stipulating to court-facilitated notice to "[a]ll current and former STNAs, nurse's assistants, home health aides, LPNs, and CNAs employed by Health Care Facility Management, LLC, d/b/a CommuniCare Family of Companies or OHNH Emp, LLC in Ohio" at any time during the three years preceding the notice date. (Doc. No. 25.)

On November 16, 2022, the Court approved the Parties' proposed notice.

Plaintiff's counsel sent notice by mail on January 3, 2023, email on February 20, 2023, and text message on April 18, 2023. The final notice period closed on June 2, 2023. (Ex. 3, ¶ 25.)

On September 24, 2024, the Parties attended mediation before Magistrate Judge Knapp. The mediation was successful.

**B. Negotiation of the Settlement**

Between May 2022 and September 2024, the Parties engaged in an extensive exchange of information which included the production of time and pay information relating to Plaintiff and the Opt-Ins, performing extensive calculations to determine the alleged damages of Plaintiffs, and holding numerous discussions regarding the calculation of the alleged damages and potential resolution. (Ex. 3, at ¶ 29.)

The Parties engaged in substantial investigation and both formal and informal discovery prior to negotiating the Settlement. (*Id.* at ¶ 35.) Prior to filing the Action, Plaintiffs' Counsel

performed a significant amount of research and factual investigation of the claims set forth a in the Complaint. (*Id.*) This included interviewing and obtaining declarations from numerous putative class members. (*Id.*) Counsel for the Parties engaged in numerous and lengthy discussions regarding the alleged damage calculations, Plaintiffs' claims and Defendant's defenses, and a successful mediation before Magistrate Judge Knapp. (*Id.* at ¶ 32.)

The Parties engaged in a comprehensive exchange of information regarding Plaintiffs' claims and Defendant's defenses to such claims. (*Id.* at ¶ 36.) This included a complete analysis and calculation of Representative Plaintiff's and Opt-In Party Plaintiffs' alleged overtime damages. (*Id.*)

The Parties engaged in extensive legal discussion, which included numerous and lengthy discussions between counsel for the Parties. (*Id.* at ¶ 37.)

In September 2024, the Parties engaged in settlement negotiations, including the exchange of numerous letters and discussions between Counsel for the Parties detailing the Parties' legal and factual positions, as well mediation with the assistance of Magistrate Judge Knapp. (*Id.* at ¶ 31-32.)

On September 24, 2024, in an effort to reach a compromise and to avoid the expense and burden of litigation, the Parties reached an agreement to settle the lawsuit, on the terms set forth in the Settlement Agreement. (*Id.* at ¶ 32.)

### C. The Settlement Terms

If approved by the Court, the Settlement will cover Representative Plaintiff and the 246 Opt-In Party Plaintiffs ("Plaintiffs"). Because the proposed Settlement is an FLSA settlement for employees who have already opted in, as opposed to a Rule 23 *opt-out* settlement that would bind absent class members, and because the opt-ins already consented to Mejel Jefferys as the

Representative Plaintiff and to be bound by any settlement and/or judgement in this case, no fairness hearing is required or requested by the Parties. *See Moore v. Ackerman Inv. Co.*, C 07-3058-MWB, 2009 WL 2848858 (N.D. Iowa Sept. 1, 2009) ("Section 216(b) does not expressly require a 'fairness' hearing on a proposed settlement, as Rule 23 of the Federal Rules of Civil Procedure does for class actions pursuant to that rule, and Rule 23 requirements are not directly applicable to a collective action pursuant to § 216(b)."); *McLean v. HSM Elec. Prot. Services, Inc.*, 607CV1680ORL28DAB, 2008 WL 4642270 (M.D. Fla. Oct. 8, 2008) (same); *Barnes v. Benzerenterprises, Inc.*, 607CV1754-ORL-22DAB, 2008 WL 4059839, (M.D. Fla. Aug. 27, 2008) ("the Court determines that there is no need for a fairness hearing").

The Settlement's Gross Amount is Three Hundred Seven Thousand, Two Hundred Forty-Seven Dollars and Eighty-Seven Cents ($307,247.87), which Defendants will pay as separate payments as follows: (1) Individual Payments to each Plaintiff for his or her alleged unpaid overtime compensation; (2) Representative Plaintiff's service payment for her service as representative plaintiff and for executing the Individual Settlement Agreement and Release; (3) Plaintiffs' Counsel's attorneys' fees; and (4) Plaintiffs' Counsel's expenses in the Action.

**1. Individual Payments**

Defendant will pay One Hundred Ninety-Three Thousand, Five Hundred Thirty-One Dollars and Ninety-One Cents ($193,531.91) to the Plaintiffs, divided into Individual Payments. The Individual Payments were calculated proportionally on each Plaintiffs' alleged overtime damages and represent alleged unpaid overtime compensation for approximately three minutes of each of the meal periods that Plaintiffs allege they worked from three years prior to the date they opted into this case through February 1, 2022, and approximately 13.5 minutes of each of the meal periods that they allege they worked from February 2, 2022 through July 1, 2024, except that each

Plaintiff will receive a minimum payment of $9.10. (Ex. 3 at ¶ 45.) Prior to February 1, 2022, Plaintiffs had the opportunity to manually clock in and out when they took meal periods. (*Id.*) After February 1, 2022, Defendant automatically clocked Plaintiffs out for meal periods. (*Id.*) Defendant denies that Plaintiffs spent any time working during time that they were clocked out, manually or automatically, for meal periods. (*Id.*)

The list of each Eligible Settlement Participant's Individual Payment will become Appendix 1 to the Agreement.

**2. Service Award**

Defendant will pay Five Thousand Dollars and No Cents ($5,000.00) to Plaintiff Jefferys, in addition to her Individual Payment, for her service as the Representative Plaintiff and for executing the full release of claims, attached hereto as Exhibit 2.

**3. Attorneys' Fees**

Defendant will pay One Hundred Two Thousand, Four Hundred Fifteen Dollars and Ninety-Six Cents ($102,415.96) to Plaintiffs' Counsel for attorneys' fees incurred to date and attorneys' fees that Class Counsel anticipates incurring following the filing of the Settlement.

**4. Attorneys' Expenses**

Defendant will pay Six Thousand, Three Hundred Dollars ($6,300.00) to Class Counsel for expenses incurred prior to the Settlement in prosecuting these claims.

**5. Release of Claims**

In exchange, the Action will be dismissed with prejudice, and the Plaintiffs will release Defendant from federal and state wage-and-hour claims, rights, demands, liabilities, and causes of action that were or could have been asserted in Plaintiff's Complaint, including but not limited to claims for unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorneys'

fees, and expenses, pursuant to the Fair Labor Standards Act and corresponding state wage and hour statutes for the Released Period.

## III. The Approval's Propriety

The proposed Agreement is subject to the Court's approval pursuant to section 216(b) of the FLSA. As shown in the attached Declaration of Class Counsel Alanna Klein Fischer and as explained below, the Court's approval is warranted.

### A. The Seven-Factor Standard is Satisfied

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 216(b) "after scrutinizing the settlement for fairness." *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868, *1 n. 1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982)).

As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, *3 (E.D. Ky. Oct. 23, 2008). The Sixth Circuit uses seven factors to evaluate class action settlements, and the Crawford court applied those factors in assessing the fairness of an FLSA settlement:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)). As shown below and in the Fischer Declaration (*see* Exhibit 3), the standard supports the Settlement's approval.

**1. No Indicia of Fraud or Collusion Exists**

The Parties' respective counsel have extensive experience litigating claims under the FLSA. The Agreement was achieved after arms-length and good faith negotiations between the Parties, with a qualified and well-respected mediator's aid. As such, there is no indicia of fraud or collusion.

**2. The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval**

The policy favoring the settlement of class actions and other complex cases applies forcefully here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming.

Defendant claims that even if Plaintiffs could succeed on the merits (which it contends they could not), Plaintiffs cannot prove a willful violation of the law, and thus, no wages would be owed for the third year of the three-year limitations period. In addition, the Parties disagree as to whether Plaintiffs could recover liquidated damages under the FLSA. The Parties also disagree over whether Plaintiffs had the opportunity to clock in if they were working during a meal period. Finally, the Parties disagree over whether Plaintiffs actually performed work while clocked out for meal periods.

If forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted wrangling. The Agreement, on the other hand, provides prompt, efficient, and substantial relief to Plaintiff and the Opt-in Plaintiffs, and amplifies the benefits of that relief through the economies of collective resolution.

**3. Investigation Was Sufficient to Allow the Parties to Act Intelligently**

The Parties engaged in substantial investigation prior to negotiating the Settlement

Agreement. Relevant information was exchanged including a complete analysis of each Plaintiffs' alleged overtime damages with respect to the claims alleged in the lawsuit. (Ex. 3, ¶ 36.) Plaintiffs' Counsel obtained and reviewed detailed payroll records for the Plaintiffs, and the legal issues in the case were thoroughly researched by counsel for the Parties. (*Id.*) All aspects of the dispute are well-understood, and were vehemently argued, by both sides. (*Id.* at ¶ 38.)

**4. The Risks of Litigation Favor Approval**

"The likelihood of success . . . provides a gauge from which the benefits of the settlement must be measured." *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984). Given the factual and legal complexity of this matter, it is difficult to assess Plaintiffs' likelihood of success at trial. Plaintiffs' claims are based on disputed issues of fact and law and Plaintiffs' success at trial is far from guaranteed. In sum, although Plaintiffs assert that the claims are meritorious, the action certainly is not without risk. This factor thus weighs in favor of approval.

Counsel for both Parties believe in their clients' positions' merits, but nonetheless recognize that litigation is uncertain in terms of duration, cost, and result. Moreover, in the present case, Defendant raises affirmative defenses to Plaintiffs' claims, and the outcome of those defenses is uncertain as well. Continued litigation would be risky for all and at each stage, including trial.

Even if Plaintiffs succeed on the merits of their claims, the amount of recovery is uncertain and something upon which the Parties continue to disagree. Even if Plaintiffs were to succeed on the merits, a jury verdict could result in a monetary award of less than the amount obtained through this settlement.

**5. Counsel and Class Representative Favor the Agreement**

Plaintiffs' range of possible recovery is also disputable. Even if Plaintiffs succeed on their claims' merits, the recovery amount is uncertain and something upon which the Parties continue

to disagree.

The endorsement of experienced class counsel "is entitled to significant weight, and supports the fairness of the class settlement." *UAW v. Ford Motor Co.*, No. 07-CV-14845, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008). Here, Plaintiffs' Counsel believes the settlement is fair, reasonable, and adequate. (See Ex. 3, ¶ 42.) Class Counsel has extensive experience in wage-and-hour class and collective actions, has acted in good faith, and has vigorously represented their client in negotiating the settlement. (*See* Ex. 3.) Representative Plaintiff has been fully informed and involved in the settlement process and agrees to the Agreement. *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 533 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011).

**6. Absent Class Members' Reaction**

The absence of Class Members' objection indicates that the Class supports the settlement. *Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-cv-1119, 2011 WL 292008, at *6 (S.D. Ohio Jan. 26, 2011); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 498-99 (E.D. Mich. 2008) (small number of opt-out requests indicative of the adequacy of the settlement). In the present case, there are no objections by Class Members. However, unlike a Rule 23 Class Action settlement, each Class Member had the option of opting into this matter. The Plaintiffs have already consented to Mejel Jeffereys as the Representative Plaintiff and to be bound by any settlement and/or judgement in this case, no fairness hearing is required or requested by the Parties.

**7. Settlement is in the Public Interest**

"[T]he law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). The settlement ends complex litigation that has been pending for over 18 months and provides substantial relief to Eligible Settlement Participants

and avoids protracted, costly litigation. *See Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 905-06 (S.D. Ohio 2001). The Settlement's terms are equitable and provide a reasonable resolution to the action. Continued litigation would increase the attorneys' fees and costs, with no guarantee of a larger verdict. In fact, rulings by this Court or a verdict by a jury could result in less of recovery or no recovery for the Plaintiffs if this Court or a jury were to rule in Defendant's favor on disputed fact and law issues.

**B. The Settlement Distributions are Fair, Reasonable, and Adequate**

As a part of the scrutiny applied to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urb. Cnty. Gov't*, No. CIV. A. 06-299-JBC, 2008 WL 4724499, at *9 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999)). All components of the proposed distribution are proper and reasonable, and the settlement is fair, reasonable, and adequate for Plaintiffs.

As shown above, the seven-factor standard supports approval of the Settlement. The Parties' counsel has extensive experience litigating FLSA claims and there is no fraud or collusion. (*See* Exhibit 3.) The expense and likely duration of continued litigation favor approval, in that wage-and-hour cases for groups of employees are always expensive and time-consuming. (*Id.* at ¶ 52.) The Parties have engaged in substantial investigation prior to and during the negotiations, including extensive discovery, and the issues are well understood by both sides. (*Id.* at ¶ 30, 38.) The outcome is uncertain for the Plaintiffs, and the risks of continued litigation are evident. (*Id.* at ¶ 59.) The Parties' experienced attorneys support the Settlement, as does Representative Plaintiff. (*See* Exhibit 3.) All Individual Payments will be calculated proportionally on each Plaintiffs' alleged overtime damages.

If approved by the Court, the Proposed Settlement will provide adequate payments to the Plaintiffs for alleged unpaid overtime compensation. However, continued litigation over these issues would be expensive, result in attorneys' fees and costs that would likely exceed the contested amount, and would be risky for Plaintiffs as a determination regarding those amounts would hinge on certain factual disputes that would need to be determined by a jury. (*Id*. at ¶ 59.) As such, the Parties reached a compromise considering the likely risks for both sides.

Pursuant to the Agreement, each Plaintiff will receive an Individual Payment calculated proportionally on his or her alleged overtime damages, representing overtime compensation for working approximately three minutes of each of the meal periods that Plaintiffs allege they worked from three years prior to the date they opted into this case through February 1, 2022, and approximately 13.5 minutes of each of the meal periods that they allege they worked from February 2, 2022 through July 1, 2024, except that each Plaintiff will receive a minimum payment of $9.10. (*Id*. at ¶ 45.) Prior to February 1, 2022, Plaintiffs had the opportunity to manually clock in and out when they took meal periods. (*Id.*) After February 1, 2022, Defendants automatically clocked Plaintiffs out for meal periods. (*Id.*) Defendants deny that Plaintiffs spent any time working during time that they were manually or automatically clocked out for meal periods. (*Id.*) Accordingly, the settlement proceeds are fair, reasonable, and adequate.

### C. Class Counsel's Fees and Expenses are Proper and Reasonable

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b).

The Sixth Circuit has underscored that "an award of attorney fees … encourage[s] the vindication of congressionally identified policies and rights," and thus "we have 'upheld

substantial awards of attorney's fees even though a plaintiff recovered only nominal damages.'" *Fegley v. Higgins*, 19 F.3d 1126, 1134-1135 (6th Cir. 1994) (internal quotation omitted). *Fegley* upheld an award of $40,000.00 in fees even though the plaintiff recovered $7,680.00 in damages. *Id*. Courts outside the Sixth Circuit similarly do not unduly emphasize the plaintiff's recovery when assessing attorneys' fees. *See, e.g., Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 358 (5th Cir.1990) (upholding award of $9,250 in attorney's fees even though Plaintiff recovered only $1,698.00); *Bonnette v. Cal. Health & Welfare*, 704 F.2d 1465, 1473 (9th Cir. 1983) (affirming award of $100,000 in attorney's fees for a recovery of $20,000); *Gonzalez v. Bustleton Servs., Inc.*, No. CIV.A. 08-4703, 2010 WL 3282623, at *7 (E.D. Pa. Aug. 18, 2010) (awarding $73,195 in attorneys' fees, $2,871.78 in attorneys' costs in an FLSA action where plaintiffs recovered $18,495.68); *Albers v. Tri-State Implement, Inc.*, No. CR. 06-4242-KES, 2010 WL 960010, at *26 (D.S.D. Mar. 12, 2010) (awarding $43,797 in attorneys' fees and $2,137.97 in damages); *Perrin v. John B. Webb & Assocs., Inc.*, No. 604CV399ORLKRS, 2005 WL 2465022, at *5 (M.D. Fla. Oct. 6, 2005) (awarding $7,446 in attorneys' fees and $270 in damages, recognizing that "in order for plaintiffs with minimal claims to obtain counsel, those counsel must be able to recover a reasonable fee for their time."); *Heder v. City of Two Rivers*, 255 F. Supp. 2d 947, 955-56 (E.D. Wis. 2003) (awarding $36,204.88 in fees even though plaintiff's damages totaled only $3,540.00); *Griffin v. Leaseway Deliveries, Inc.*, No. CIV. A. 89-6522, 1992 WL 398381, at *6 (E.D. Pa. Dec. 31, 1992) (awarding attorney's fees of $33,631.00 for a plaintiff's award of $17,467.20).

Plaintiffs' Counsel's Declaration demonstrates the proposed fees' and expenses' fairness and reasonableness. (*See* Exhibit 3.)

Pursuant to the Settlement, Defendant will pay Plaintiffs' Counsel One Hundred Two Thousand, Four Hundred Fifteen Dollars and Ninety-Six Cents ($102,415.96) in attorneys' fees.

This amount represents one third of the Settlement's Gross Amount.

Courts consistently approve a one-third fee request and Class Counsel's one-third fee request has been approved in similar collective and class actions in Federal Courts, including the Northern District of Ohio. *See, e.g., Etheridge v. Vita-Mix*, Case No. 1:21-cv-0179 (N.D. Ohio); *Viconovic v. Vallourec Star*, Case No. 1:20-cv-1591 (N.D. Ohio); *Klaus v. Humana Pharmacy, Inc.*, Case No. 1:19-cv-01025 (S.D. Ohio); *Rosenbohm v. Cellco Partnership*, Case No. 2:17-cv-00731 (S.D. Ohio); *Johnson v. New York Life Insurance Co.*, Case No. 1:19-cv-01898 (N.D. Ohio); *Shumate v. Genesco, Inc.*, Case No. 1:17-cv-03574 (S.D. Ind.); *Grayer, et al. v. Kennametal, Inc.*, Case No. 1:16-cv-01382 (N.D. Ohio); *Allen v. Sutherland Global Services*, Case No. 6:17-cv-6059 (W.D.N.Y); *Lawrence v. Platinum Home Helper,* Case No. 1:17-cv-1479 (N.D. Ohio); *Fullerton v. Golden Flake Snack Foods, Inc.*, Case No. 3:17-cv- 00296 (N.D. Florida); *Miller v. Flowers Baking Co. of Ohio*, Case No. 3:17-cv-725 (N.D.NY.); *Caringi v. Relentless Recovery*, Case No. 1:16-cv-2236 (N.D. Ohio); *Tabor v. A Better Alternative to Senior Care, Inc.,* Case No. 1:16-cv-1281 (N.D. Ohio); *Castro v. Heart Home Care, LLC*, Case No. 1:16-cv-571 (N.D. Ohio); *Bainbridge v. Medline Industries*, Case No. 5:16-cv-00555 (N.D. Ohio); *Terry v. All Hearts Home Health Care*, Case No. 1:16-cv-515 (N.D. Ohio); *Webber v. Nine Energy*, Case No. 4:15-cv-2406 (S.D. Texas); *Swiger. Utz Quality Foods, Inc.*, Case No. 1:15-cv-2196 (M.D. Penn); *Houston v. Progressive Casualty Insurance Co.*, Case No. 1:15-cv-01853 (N.D. Ohio); *Hillebrandt, et al. v. Horizontal Wireline Services, LLC,* Case No. 2:15-cv-1307 (W.D. Pa); *Rucker v. Quality Blow Molding,* Case No. 1:15-cv-1039 (N.D. Ohio); *Green v. H.A.D., Inc.*, Case No. 2:15-cv-933 (S.D. Ohio); *Douglas, et al. v. J&K Subway, Inc.,* Case No. 4:14-cv-2621 (N.D. Ohio); *McPherson v. Horseshoe Cleveland*, Case No. 1:14-cv-02475 (N.D. Ohio); *Smith v. CMHA*, Case No. 1:14-cv-1409 (N.D. Ohio); *Armbruster v. City of Cleveland*, Case No. 1:13-cv-2626 (N.D. Ohio); *Williams*

*v. Beckett Air, Inc*., Case No. 1:12-cv-2796 (N.D. Ohio); *Welch v. Incept Corporation*, Case No. 5:12-cv-1775 (N.D. Ohio); *Malaj v. Gohlke*, Case No. 1:11-cv-1578 (N.D. Ohio); *Campbell v. Judson Services*, Case No. 1:11-cv-906 (N.D. Ohio); *Murphy v. 1-800-Flowers*, Case No. 1:10-cv-1822 (N.D. Ohio); *Miller v. National Enterprise Systems*, Case No. 1:10-cv-1664 (N.D. Ohio); *Osolin v. Turocy & Watson LLP*, et al, Case No. 1:09-cv-2935 (N.D. Ohio); *Kelly v. National Enterprise Systems*, Case No. 1:09-cv-2268 (N.D. Ohio); *McNelley v. Aldi*, Case No. 1:09-cv-1868 (N.D. Ohio); *Rotuna v. West Customer Management Group*, Case No. 4:09-cv-1608 (N.D. Ohio); *Jackson v. Papa John's*, Case No. 1:08-cv-2791 (N.D. Ohio); *Dillworth v. Case Farms*, Case No. 5:08-cv-1694 (N.D. Ohio); *Fincham v. Nestlé Prepared Foods Company*, Case No. 1:08-cv-73 (N.D. Ohio); *McGhee v. Allied Waste Industries*, Case No. 1:07-cv-1110 (N.D. Ohio).

Further pursuant to the Settlement, Defendant will pay Plaintiffs' Counsel Six Thousand, Three Hundred Dollars ($6,300.00) for expenses that Plaintiffs' Counsel has incurred to date in the litigation of this Action. (Ex. 3, ¶ 50, 57.)

**D. The Service Award to Plaintiff Jefferys is Fair and Reasonable**

The Parties request for approval of a service award to Plaintiff Mejel Jefferys for Five Thousand Dollars and No Cents ($5,000). "[C]lass representatives who have had extensive involvement in a . . . litigation deserve compensation above and beyond amounts to which they are entitled to by virtue of class membership alone." *Dallas v. Alcatel-Lucent USA, Inc.*, No. 09 Civ. 14596, 2013 WL 2197624, at *10 (E.D. Mich. May 20, 2013); *see also Griffin v. Flagstar Bancorp. Inc.*, No. 10 Civ. 10610, 2013 WL 6511860, at *9 (E.D. Mich. Dec. 12, 2013) (stating that service "awards have been approved by the Sixth Circuit"); *In re Packaged Ice Antitrust Litig.*, No. 98 MDL 1952, 2012 WL 5493613, at *9 (E.D. Mich. Nov. 13, 2012) (substantially same).

Courts acknowledge that named plaintiffs in class and collective actions play a crucial role

in bringing justice to those who would otherwise be hidden from judicial scrutiny. *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, 2012 WL 5493613, at *9 (service awards are "well deserved" when class representative spent "time and effort . . . all to the general benefit of the class") (citing *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D. Mich. Oct. 10, 2003) (service awards "deserve[d]" when named plaintiffs "devoted a significant amount of time to the prosecution of this matter for the benefit of absent Class members")); *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 WL 532960, at *1 (S.D.N.Y. Feb. 9, 2010) ("Enhancement awards for class representatives serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts."); *Velez v. Majik Cleaning Serv.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) ("in employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers"). As stated in *In re Dunn & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366 (S.D. Ohio 1990):

> Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent.

(citing *Wolfson v. Riley*, 94 F.R.D. 243 (N.D. Ohio 1981); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985); *In re Minolta Camera Products Antitrust Litigation*, 666 F. Supp. 750, 752 (D. Md. 1987)).

In examining the reasonableness of service awards to plaintiffs, courts consider: (1) the actions they took to protect the interests of class or collective action members, and whether those actions resulted in substantial benefit to class or collective action members; (2) the personal risk they incurred; and (3) the amount of time and effort they spent in pursuing the litigation. *See, e.g.*,

*Bert v. AK Steel Corp.*, No. 02 Civ. 467, 2008 WL 4693747, at *3 (S.D. Ohio Oct. 23, 2008); *In re Skechers Toning Shoe Products Liab. Litig.*, Nos. 11 MD 2308, et al., 2013 WL 2010702, at *14 (W.D. Ky. May 13, 2013); *see also Dallas*, No. 09 Civ. 14596, 2013 WL 2197624, at *10 (in common fund cases, class representatives "deserve compensation above and beyond amounts to which they are entitled to by virtue of class membership alone"); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 787 (N.D. Ohio 2010) (same). Here, Plaintiff Jefferys satisfies all three factors.

First, Plaintiff Jefferys has been involved in this action since the pre-suit investigation that gave rise to this action. (*See* Ex. 3, ¶ 17.) She participated in the pre-suit investigation, provided information crucial to the evaluation of and pursuit of the claims, assisted in preparation for mediation, attended mediation, and participated in settlement negotiations. (*Id*.) These actions have resulted in substantial benefit to Plaintiffs, leading to a favorable settlement for them.

Second, Plaintiff Jefferys undertook substantial direct and indirect risk. Plaintiff Jefferys agreed to bring the action in her name and agreed to testify at deposition and trial. (*Id*. ¶ 16.) In doing so, Plaintiff Jefferys assumed the risk of retaliation and blacklisting. *Id*.; *see Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (incentive awards are "particularly appropriate in the employment context . . . [where] the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers"); *see also Bozak v. FedEx Ground Package Sys., Inc.*, No. 3:11-CV-00738-RNC, 2014 WL 3778211, at *9 (D. Conn. July 31, 2014) (lead plaintiff "assumed risk of retaliation"); *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A class representative who has been exposed to a demonstrable risk of employer retaliation or whose future employability has

been impaired may be worthy of receiving an additional payment, lest others be dissuaded."); *Velez v. Majik Cleaning Serv., Inc.*, No. 03 CIV. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) (observing that named plaintiffs "exposed themselves to the prospect of having adverse actions taken against them by their former employer and former co-workers"). *See also Sewell v. Bovis Lend Lease, Inc.*, No. 09 CIV. 6548 RLE, 2012 WL 1320124, at *14 (S.D.N.Y. Apr. 16, 2012) ("[F]ormer employees . . . fac[ed] potential risks of being blacklisted as 'problem' employees."); *Parker v. Jekyll & Hyde Ent. Holdings, L.L.C.*, No. 08 CIV. 7670 BSJJCF, 2010 WL 532960, at *1 (S.D.N.Y. Feb. 9, 2010) ("former employees put in jeopardy their ability to depend on the employer for references in connection with future employment.")

Since Plaintiff Jefferys was employed by Defendant when she initiated the lawsuit, she risked retaliation from her current employer and risked her ability to secure future employment. *See Sewell*, 2012 WL 1320124, at *14 ("[F]ormer employees . . . fac[ed] potential risks of being blacklisted as 'problem' employees."); *Guippone v. BH S & B Holdings, LLC*, No. 09 CIV. 01029 CM, 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011) ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person."); *Parker*, 2010 WL 532960, at *1 ("former employees put in jeopardy their ability to depend on the employer for references in connection with future employment."). Service awards "provide an incentive to seek enforcement of the law despite these dangers." *Id.*

Third, Plaintiff Jefferys spent significant time and effort pursuing this litigation on behalf of the Plaintiffs. This included the time and effort she expended in pre-litigation assistance to Plaintiffs' Counsel in investigating the claims brought, the time and effort spent in assisting with mediation preparation. (Ex. 3, ¶ 17.)

Additionally, the amount of the requested service awards is reasonable and consistent with awards that have been granted in employment class and collective actions. In FLSA cases in this Circuit and elsewhere, courts consistently approve service awards. *See Pieber v. SVS Vision, INC.*, No. CV 20-13051, 2022 WL 687248, at *1 (E.D. Mich. Mar. 8, 2022) (approving service awards of $6,000 to a representative plaintiff); *Al-Sabur v. ADS Alliance Data Systems, Inc.*, No. 2:18-cv-957, ECF No. 23 (S.D. Ohio Aug. 6, 2019) (approving service awards of $12,500 for a representative plaintiff); *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-CV-426, 2019 WL 275711, at *6 (S.D. Ohio Jan. 18, 2019) (Dlott, J.) ($10,000 service award for each named plaintiff); *Arledge v. Domino's Pizza, Inc.*, No. 3:16-CV-386-WHR, 2018 WL 5023950, at *6 (S.D. Ohio Oct. 17, 2018) ($10,000 service award for each named plaintiff); *Castillo v. Morales, Inc.*, No. 2:12-CV-650, 2015 WL 13021899, at *5 (S.D. Ohio Dec. 22, 2015) (awarding $8,000 service payment to class representative in wage and hour case); *Swigart v. Fifth Third Bank*, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) (awarding $10,000 service payments to two class representatives in wage and hour case); *Johnson v. Midwest Logistics Sys., Ltd.*, No. 2:11-CV-1061, 2013 WL 2295880, at *5 (S.D. Ohio May 24, 2013) (awarding $12,500 service award).

Moreover, Jefferys' service payment also represents compensation for her agreeing to the Individual Settlement Agreement and Release, in which she releases all potential claims against Defendant.

## IV. Conclusion

For the reasons addressed above, the Parties respectfully request that this Court approve the Settlement by entering the proposed Order of Dismissal and Approving Settlement attached as Exhibit 4.

Respectfully submitted,

*/s/Michele L. Jakubs*
Michele L. Jakubs (Ohio Bar No. 0071037)
ZASHIN & RICH CO., L.P.A.
mlj@zrlaw.com
950 Main Ave., 4th Floor
Cleveland, OH 44113
T: 216/696-4441
F: 216/696-1618

Defendants' Attorneys

*/s/ Alanna Klein Fischer*
Alanna Klein Fischer (0090986)
Anthony J. Lazzaro (0077962)
The Lazzaro Law Firm, LLC
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, OH 44022
Phone: 216-696-5000
Facsimile: 216-696-7005
alanna@lazzarolawfirm.com
anthony@lazarrolawfirm.com

Plaintiff's Attorneys

**CERTIFICATE OF SERVICE**

I certify that on November 8, 2024, the foregoing document was filed via the Court's electronic filing system and will be served on all parties via that system.

*s/ Michele L. Jakubs*
Michele L. Jakubs (Ohio Bar No. 0071037)

*Attorney for Defendant*