UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MEJEL JEFFREYS, on behalf of herself and all others similarly situated, | ) ) ) ) | CASE NO. 5:22-cv-371 |
| PLAINTIFFS, | ) ) | CHIEF JUDGE SARA LIOI |
| vs. | ) ) ) ) | MEMORANDUM OPINION AND ORDER |
| HEALTH CARE FACILITY MANAGEMENT, LLC d/b/a COMMUNICARE FAMILY OF COMPANIES, et al., | ) ) ) ) ) | |
| DEFENDANTS. | ) | |

Now before the Court is the parties' Joint Motion for Approval of Settlement ("Joint Motion"). (Doc. No. 63 (Joint Motion).) The Joint Motion is supported by the Joint Stipulation of Settlement and Release ("Settlement") (Doc. No. 63-1, Ex. 1 (Settlement)), as well as the Declaration of Alanna Klein Fischer ("Attorney Fischer") (Doc. No. 63-3, Ex. 3 (Declaration)), the Schedule of Individual Payments ("Schedule") (Doc. No. 63-1, Appx. 1 (Schedule), and the Individual Settlement and Release Agreement ("Individual Settlement") (Doc. No. 63-2, Ex. 2 (Individual Settlement)). Because the Court finds that the Settlement represents a fair resolution of plaintiffs' claims, the Joint Motion is granted and the Settlement is approved.

I. **BACKGROUND**

On March 7, 2022, plaintiff Mejel Jeffreys ("Jeffreys") filed a federal action, on behalf of herself and similarly situated individuals, asserting violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and corresponding state wage-and-hour statutes. (*See generally*

Doc. No. 1 (Complaint).) On May 27, 2022, Jeffreys filed an amended complaint against defendants Health Care Facility Management, LLC d/b/a CommuniCare Family of Companies and OHNH Emp, LLC (collectively, "defendants"). (Doc. No. 15 (First Amended Complaint).)[1] Jeffreys, who was still employed by defendants at the time this action was initiated, alleged that defendants failed to pay their hourly, non-exempt employees, including her, for all hours worked, including overtime compensation at the rate of one and one-half times their regular rates of pay for the hours they worked over 40 hours each workweek. Specifically, Jeffreys alleged that defendants violated the FLSA and state law by failing to pay her and similarly-situated employees for time spent when clocked out for a meal period. (*Id*. ¶¶ 19–39.) Defendants deny that they violated the FLSA or state wage-and-hour law and maintain that all compensable work performed by Jeffreys, and others similarly situated, was properly compensated under federal and state law. (*See generally* Doc. No. 19 (Answer to Amended Complaint).)

On September 22, 2022, the Court conducted a case management conference, during which counsel advised the Court that they were working toward an agreement on conditional certification. (Minutes of Proceedings [non-document], 9/22/2022.) On October 12, 2022, the parties filed their Joint Proposed Stipulation to Conditional Certification and Notice, in which the parties stipulated that the action would cover Jeffreys and the following individuals:

> All current and former STNAs, nurse's assistants, home health aides, LPNs, and CNAs employed by Health Care Facility Management, LLC, d/b/a/ CommuniCare Family of Companies or OHNH Emp, LLC in Ohio at any time from three years prior to the Distribution Date (as described [in the joint motion]) to the present.

---

[1] Several entities that were included in the original complaint—CommuniCare, Inc., CommuniCare Health Services, Inc, and CommuniCare Cares II, Inc.—were not named as defendants in the amended pleading and were dismissed from this action. (*Compare* Doc. No. 1 *with* Doc. No. 15.)

(Doc. No. 25 (Joint Motion on Certification) ¶ 1.) On November 16, 2022, the Court approved the Joint Proposed Stipulation of Conditional Certification and Proposed Notice. (Order [non-document], 11/16/2022.) The notices were issued according to the terms of the parties' joint conditional certification motion, and various individuals filed and/or withdrew consent forms, with Jeffreys and 343 opt-in plaintiffs remaining at the time of settlement. (Doc. No. 63-3 ¶ 40, *see id.* ¶ 33 (citing Doc. No. 62 (Notice of Withdrawing Consent Forms)).) The Court set dates and deadlines to govern the case, which were subsequently amended twice at the parties' request. (Doc. No. 26 (Case Management Plan and Trial Order ("CMPTO"); Doc. No. 42 (Amended CMPTO); Order [non-document], 10/03/2023; Doc. No. 48 (Second Amended CMPTO); Minutes of Proceedings [non-document], 4/5/2024.)

Between May 2022 and September 2024, the parties engaged in an informal exchange of information—including the production of over 30,000 pages of payroll and timekeeping records—which led to the performance of extensive calculations to determine the claimed damages of Jeffreys and the opt-in plaintiffs. (Doc. No. 63-3 ¶¶ 29–30, 35–36.) During this same time period, the parties also engaged in extensive legal discussions and correspondence before pursuing formal dispute resolution. (*Id.* ¶ 29.) On September 24, 2024, the parties and counsel attended a mediation with Magistrate Judge Amanda M. Knapp. At the mediation, the parties reached an agreement to settle the action, the terms of which are set forth in the Settlement appended to the parties' joint motion. (*Id.* ¶ 32; Doc. No. 63-1; *see* Doc. No. 61 (Minute Order).) On November 8, 2024, the parties filed the instant motion for approval of the Settlement.

The gross settlement amount is $307,247.87, as set forth in the Settlement. (Doc. No. 63-1 ¶ 3.1.) From the total settlement amount, $193,531.91 will be paid to Jeffries and the opt-in

plaintiffs (one half of each payment will represent wages and the other half will be treated as liquidated damages), with individual payment amounts to be made on a proportional basis, taking into account the claimed estimated unpaid overtime compensation damages during the applicable time period. (*Id*. ¶¶ 3.2–3.4.) The Settlement further provides for a service award to Jeffreys in the amount of $5,000.00 (*id*. ¶ 3.5), and an award of attorney's fees to plaintiffs' counsel in the amount of $102,415.96 and costs in the amount of $6,300.00. (*Id*. ¶¶ 3.6–3.7.)

## II. APPLICABLE LAW

"Employees are guaranteed certain rights by the FLSA, and public policy requires that these rights not be compromised by settlement." *Crawford v. Lexington-Fayette Urban Cty. Gov*., No. 06-cv-299, 2008 WL 4724499, at *2 (E.D. Ky. Oct. 23, 2008). "The central purpose of the FLSA is to protect covered employees against labor conditions 'detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.'" *Id*. (quoting 29 U.S.C. § 202).

The provisions of the FLSA are mandatory and, except in two narrow circumstances, are generally not subject to bargaining, waiver, or modification by contract or settlement. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706, 65 S. Ct. 895, 89 L. Ed. 1296 (1945); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). The first exception involves FLSA claims that are supervised by the Secretary of Labor pursuant to 29 U.S.C. § 216(c). *Lynn's Foods, Inc*., 679 F.2d at 1533. The second exception, applicable here, encompasses instances in which federal district courts approve settlement of suits brought in federal district court pursuant to § 16(b) of the FLSA. *Id*.

In reviewing the settlement of a federal plaintiff's FLSA claims, the district court must "'ensure that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime.'" *Rotuna v. W. Customer Mgmt. Grp. LLC*, No. 4:09-cv-1608, 2010 WL 2490989, at *5 (N.D. Ohio June 15, 2010) (quoting *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719 (E.D. La. 2000)). The existence of a bona fide dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA. *Id.* (citing *Crawford*, 2008 WL 4724499, at *3). The Court should also consider the following factors: the risk of fraud or collusion, the complexity, expense, and likely duration of the litigation, the amount of discovery completed, the likelihood of success on the merits, and the public interest in settlement. *Crawford*, 2008 WL 4724499, at *3 (citing *Int'l Union, United Auto., Aerospace, & Agr. Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). In addition, where the settlement agreement proposes an award of attorney's fees, such fees must be reasonable. *See generally Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999) (citing *Blum v. Stenson*, 465 U.S. 886, 893, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)).

### III. ANALYSIS

At the outset, the Court finds that the divergent views of the facts and the law presented bona fide disputes that, had the parties not reached settlement, would have necessitated resolution by the Court and/or a jury. The Joint Motion confirms the same. As set forth above, the parties disagree as to whether defendants unlawfully failed to pay its non-exempt employees for all overtime for each covered workweek, including for all time spent working while clocked out for

meal periods. (*See* Doc. No. 63, at 1–2.[2]) The parties also dispute whether any FLSA violation, if one occurred, was willful and whether Jeffreys and the opt-in plaintiffs could have recovered liquidated damages under the FLSA. (*Id*. at 8.) Additionally, the parties dispute whether Jeffreys and the opt-in plaintiffs had the opportunity to clock in if they were working during a meal period, and whether Jeffreys and the opt-in plaintiffs actually performed work while clocked out for meal periods. (*Id*.)

There is no indicia of fraud or collusion in this case where the parties and their respective counsel, each of whom have considerable experience litigating FLSA claims, mediated the dispute with a neutral, third-party magistrate judge, and achieved a settlement only after months of arms-length and good faith negotiations. Also, as the parties have indicated, the case was complex, and proceeding further would be costly and time-consuming. As it is, before reaching a settlement, the parties litigated this matter for over two and one-half years. Further, litigation would likely have required the parties to engage in extensive briefing regarding a number of factual and legal issues—the result of such motion practice would have been uncertain—before possibly participating in a trial.

The Court has taken into account the assessment of counsel in this action, who has expressed the opinion that the Settlement is in the best interests of Jeffreys and the opt-in plaintiffs. (Doc. No. 63-3 ¶ 41.) Counsel further represents that the Settlement is "fair, reasonable, and adequate." (*Id*. ¶ 51.) Moreover, the lack of objections from any opt-in plaintiffs indicates that the opt-in plaintiffs support the settlement. *See Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-cv-

---

[2] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

1119, 2011 WL 292008, at *6 (S.D. Ohio Jan. 26, 2011) (citations omitted); *In re Delphi Corp. Sec. Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 498–99 (E.D. Mich. 2008) (citations omitted).

Given the uncertainty and risks surrounding each stage of litigation, including summary judgment and a possible trial, the certainty and finality that comes with a settlement also weighs in favor of a ruling approving the Settlement. Likewise, such a ruling promotes the public's interest in encouraging settlement of litigation. *See Crawford*, 2008 WL 4724499, at *9 (citations omitted). While the Court is not in a position to assess the likelihood of success on the merits, the Court finds that all other relevant factors weigh in favor of approving the Settlement.

As previously observed, the Settlement provides for several forms of relief. The Court will now discuss each in turn.

Approximately two-thirds of the total award—$193,531.91—was set aside for individual payments to Jeffreys and the opt-in plaintiffs. These individual payments were calculated proportionally on each individual's alleged overtime damages during the relevant period, with the individual payments providing additional compensation of between 3 and 13.5 minutes for each meal period alleged to have been worked. (Doc. No. 63-3 ¶ 45.[3]) A list of the actual payouts to Jeffreys and each individual opt-in plaintiff is set forth at Doc. No. 63-1, Appx. 1, and demonstrates that the individual payments are reasonable and fair given the nature of the dispute. Moreover, the Court has taken into account the assessment of plaintiffs' counsel in this action, who has expressed the opinion that the proposed settlement is a fair and adequate compromise of the disputed claims.

---

[3] Specifically, Jeffreys and the opt-in plaintiffs will receive 3 minutes of each meal period worked from three years prior to the date the individual opted into the case through February 1, 2022, and approximately 13.5 minutes of each of the meal periods they worked from February 2, 2022 through July 1, 2024, except that each opt-in plaintiff will receive at least a minimum payment of $9.10. (*Id*.) Prior to February 1, 2022, opt-in plaintiffs had the option to manually clock in and out when they took meal periods. After February 1, 2022, defendants automatically clocked the opt-in plaintiffs out for meal periods. (*Id*.)

(Doc. No. 63-3 ¶¶ 41, 51.)

The Settlement also provides for an additional payment of $5,000.00 to Jeffreys as a service award. (Doc. 63-1 ¶ 3.5) Such awards are common, and "[c]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000) (internal citation omitted). "[C]lass representatives who have had extensive involvement in a . . . litigation deserve compensation above and beyond amounts to which they are entitled to by virtue of class membership alone." *Dallas v. Alcatel-Lucent USA, Inc.*, No. 09-cv-14596, 2013 WL 2197624, at *10 (E.D. Mich. May 20, 2013) (quoting *Lonardo Travelers Indem. Co.*, 706 F. Supp. 2d 766, 787 (N.D. Ohio 2010) (further citation omitted)); *see also Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *9 (E.D. Mich. Dec. 12, 2013) (observing that service "awards have been approved by the Sixth Circuit" (citing *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) ("Incentive awards are typically awarded to class representatives for their often extensive involvement with a lawsuit."))).

Jeffreys has been involved in this action since the pre-suit investigation that gave rise to the case. (Doc. No. 63-3 ¶ 17.) Throughout the litigation process, Jeffreys provided information necessary to the evaluation of and the pursuit of the claims, assisted in preparing for mediation, attended the mediation, and participated in the settlement negotiations. (*Id.*) She also agreed to be deposed, and attend the trial, if necessary. Additionally, she took on substantial risk, as she was still employed by defendants when the action was initiated. Accordingly, the Court finds that Jeffreys expended sufficient effort, in addition to assuming personal risk, to justify the service award provided in the Settlement.

Additionally, the Settlement provides for attorney's fees in the amount of $102,415.96, which represents one-third of the total award. (Doc. No. 63, at 14; Doc. No. 63-1 ¶ 3.6.) When a settlement agreement proposes an award of attorney's fees, such fees must be reasonable. *See Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) (citing *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)). "In FLSA collective actions in Ohio, courts have almost uniformly awarded attorney's fees that constituted one-third of the fund." *Carr v. Bob Evans Farms, Inc.*, No. 1:17-cv-1875, 2018 WL 7508650, at *4 (N.D. Ohio July 27, 2018); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 WL 6310376, at *5 (S.D. Ohio Nov. 25, 2019) (indicating that one-third of the fund "is a normal fee amount in a wage and hour case"). Counsel in this case participated in numerous conferences with the Court, reviewed extensive document production, and engaged in informal settlement negotiations before they ultimately participated in a successful mediation with the magistrate judge. Additionally, plaintiffs' counsel undertook this representation on a contingent-fee basis, thus bearing the risk of losing substantial time and resources. (Doc. No. 63-3 ¶ 54.) Without a settlement, plaintiffs (and their counsel) faced a risk of not recovering at all at every stage of the proceedings. (*Id.* ¶¶ 54–55.) Furthermore, even if plaintiffs had prevailed on the merits at trial, the amount they and their counsel would have recovered is highly uncertain. (*Id.* ¶ 59.)

The Court finds that the award of attorney's fees to plaintiffs' counsel, which is supported by the declaration of Attorney Fischer, is reasonable, taking into consideration the course of proceedings and the successful outcome providing adequate relief to Jeffreys and the opt-in plaintiffs. The Court also finds that the $6,300.00 claimed in litigation expenses and costs, which are detailed in Attorney Fischer's declaration and which counsel represents were incurred during

the litigation, is reasonable under the circumstances. (*Id*. ¶¶ 56–58.)

### IV. CONCLUSION

For all of the foregoing reasons, the Court approves the Settlement.[4] The Court orders that the settlement payments be distributed in the manner, and subject to the terms and conditions, set forth in the Settlement. The claims in plaintiffs' amended complaint are dismissed with prejudice, and this case is closed. The Court shall retain jurisdiction to enforce the parties' Settlement.

**IT IS SO ORDERED**.

Dated: November 15, 2024

**HONORABLE SARA LIOI
CHIEF JUDGE
UNITED STATES DISTRICT COURT**

---

[4] For the same reasons, the Court approves the Individual Settlement between Jeffreys and defendants. (*See* Doc. No. 63-2.)